UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-4330 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| PS BUSINESS PARKS, INC., RONALD L. | : **SECURITIES EXCHANGE ACT OF** |
| HAVNER, JR., MARIA R. HAWTHORNE, | : **1934** |
| JENNIFER HOLDEN DUNBAR, M. | : |
| CHRISTIAN MITCHELL, IRENE H. OH, | : **JURY TRIAL DEMANDED** |
| KRISTY M. PIPES, GARY E. PRUITT, | : |
| ROBERT S. ROLLO, JOSEPH D. RUSSELL, | : |
| JR., PETER SCHULTZ, and STEPHEN W. | : |
| WILSON, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against PS Business Parks, Inc. ("PS Business Parks or the "Company") and the members PS Business Parks' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of PS Business Parks by affiliates of Blackstone Inc. ("Blackstone").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on May 19, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Sequoia Merger Sub I LLC ("Merger Sub"), a wholly-owned subsidiary of Sequoia Parent LP ("Parent"), an affiliate of Blackstone, will merge with and into the Company, with the Company as the surviving entity (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on April 24, 2022 (the "Merger Agreement"), each PS Business Parks stockholder will receive $187.50 in cash (the "Merger Consideration") for each PS Business Parks share owned.

3. As discussed below, Defendants have asked PS Business Parks' stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinions.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to PS Business Parks' stockholders or, in the

event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the New York Stock Exchange, headquartered in this District, and Blackstone and Merger Sub and other affiliates are headquartered in this District. Further, the closing of the Proposed Transaction will also occur in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of PS Business Parks stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Ronald L. Havner, Jr. has served as a member of the Board since 1998 and is the Chairman of the Board.

11. Individual Defendant Maria R. Hawthorne has served as a member of the Board since July 2016 and is the Company's Interim Chief Operating Officer.

12. Individual Defendant Jennifer Holden Dunbar has served as a member of the Board since February 2009.

13. Individual Defendant M. Christian Mitchell has served as a member of the Board since 2021.

14. Individual Defendant Irene H. Oh has served as a member of the Board since 2021.

15. Individual Defendant Kristy M. Pipes has served as a member of the Board since July 2019.

16. Individual Defendant Gary E. Pruitt has served as a member of the Board since February 2012.

17. Individual Defendant Robert S. Rollo has served as a member of the Board since October 2013.

18. Individual Defendant Joseph D. Russell, Jr. has served as a member of the Board since August 2003.

19. Individual Defendant Peter Schultz has served as a member of the Board since February 2012.

20. Individual Defendant Stephen W. Wilson has served as a member of the Board since July 2019 and is the Company's President and Chief Executive Officer.

21. Defendant PS Business Parks is a Maryland corporation and maintains its principal offices at 701 Western Avenue, Glendale, California 91201. The Company's stock trades on the New York Stock Exchange under the symbol "PSB."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.**   **The Proposed Transaction**

24. PS Business Parks, a member of the S&P MidCap 400, is a REIT that acquires, develops, owns, and operates commercial properties, primarily multi-tenant industrial, flex, and office space. As of September 30, 2020, the Company wholly owned 27.5 million rentable square feet with approximately 5,000 commercial customers in six states. The Company also held a 95.0% interest in a 395-unit apartment complex and a 98.2% interest in a development of a 411-unit multifamily apartment complex.

25. On April 25, 2022, the Company and Blackstone jointly announced the Proposed Transaction:

> GLENDALE, Calif. and NEW YORK--(BUSINESS WIRE)--PS Business Parks, Inc. (NYSE:PSB) ("PSB" or the "Company") and Blackstone (NYSE:BX) today announced that they have entered into a definitive agreement under which affiliates of Blackstone Real Estate ("Blackstone") will acquire all outstanding shares of common stock of PSB for $187.50 per share in an all-cash transaction valued at approximately $7.6 billion, including transaction expenses. The purchase price represents a premium of approximately 15% to the volume weighted average share price over the last 60 days.
>
> Under the terms of the agreement, which has been unanimously approved by PSB's Board of Directors, Blackstone will acquire PSB's 27 million square foot portfolio of industrial, business park, traditional office, and multifamily properties located primarily in California, Miami, Texas and Northern Virginia.
>
> "I am extremely proud of everything we have accomplished at PS Business Parks. This transaction is an exceptional outcome for our stockholders and a testament to the incredible company and portfolio of high-quality assets our team has built, acquired and

enhanced over the years," said Stephen W. Wilson, President and Chief Executive Officer of PSB.

David Levine, Co-Head of Americas Acquisitions for Blackstone Real Estate, added, "We are excited to add PS Business Parks' business park, office and industrial assets to our portfolio and look forward to leveraging our expertise to provide the best possible service and experience for PSB's customers."

**Transaction Details**

The transaction is expected to close in the third quarter of 2022, subject to approval by PSB's stockholders and other customary closing conditions. The merger agreement includes a "go-shop" period that will expire 30 days from today on May 25, 2022, which permits PSB and its representatives to actively solicit and consider alternative acquisition proposals to acquire PSB. PSB has the right to terminate the definitive merger agreement with Blackstone to enter into a superior proposal, subject to the payment of a termination fee and certain other terms and conditions of the definitive merger agreement. There can be no assurance that this process will result in a superior proposal, and PSB does not intend to disclose developments with respect to the go-shop process unless and until it determines such disclosure is appropriate or is otherwise required.

PSB's three outstanding series of preferred stock, and associated depositary shares, will remain outstanding in accordance with their terms following the closing. We currently intend to continue to have the depositary shares representing our preferred stock listed on the NYSE with public reporting so long as there is at least $75 million aggregate liquidation value of preferred stock outstanding.

Public Storage (NYSE:PSA), which holds approximately 25.9% of the outstanding shares of PSB common stock, has agreed to vote its shares in favor of the transaction, subject to the terms of a support agreement between Public Storage, the Company and an affiliate of Blackstone, which support agreement will terminate automatically upon the termination of the merger agreement, including in connection with a termination of the merger agreement by PSB to enter into a superior proposal. The transaction will also include the acquisition of Public Storage's limited partner equity interests in PSB's operating partnership at the same per unit price of $187.50.

> From the date of the merger agreement through the closing of the transaction, PSB may declare and pay regular, quarterly cash distributions to holders of its common stock and to holders of its operating partnership's units, in an amount of up to $1.05 per share or unit, including a pro rata distribution in respect of any stub period. Additionally, PSB is permitted to declare and pay regular quarterly dividends on its shares of preferred stock.
>
> As a result of today's announcement, PSB does not expect to host a conference call and webcast to discuss its financial results for the quarter ended March 31, 2022, which had previously been scheduled for May 3, 2022.
>
> **Advisors**
>
> Simpson Thacher & Bartlett LLP is serving as Blackstone's legal counsel. J.P. Morgan Securities LLC is acting as lead financial advisor to PSB and provided a fairness opinion to the PSB board of directors in connection with the transaction. Eastdil Secured is acting as real estate advisor to PSB and is also acting as a co-financial advisor to PSB. Wachtell, Lipton, Rosen & Katz is serving as PSB's legal advisor.

\* \* \*

26.   The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that PS Business Parks' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.   The Materially Incomplete and Misleading Proxy Statement**

27.   On May 19, 2022, PS Business Parks filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or

omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

28. The Proxy Statement fails to provide material information concerning financial projections by PS Business Parks management and relied upon by J.P. Morgan in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and J.P. Morgan with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that PS Business Parks management provided to the Board and J.P. Morgan. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

29. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Cash Net Operating Income, Adjusted EBITDA, and Unlevered Free Cash Flow, but fails to provide a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

30. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

33. With respect to J.P. Morgan's *Publicly Traded Company Analysis*, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

34. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) line items used to calculate the Company's Unlevered Free Cash Flows; (ii) the terminal values of the Company; (iii) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 2.75% to 3.25%; (iv) the inputs and assumptions underlying the use of the discount rates of 7.00% to 7.50%; and (v) the Company's weighted average cost of capital and the inputs used for its calculation.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of PS Business Parks within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of PS Business Parks, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of PS Business Parks, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of PS Business Parks, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 26, 2022

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*